UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

JAMES V. WILTSHIRE,                                      10 Civ. 6947

                              Plaintiff,                    OPINION

    -against-

KEAGAN MARIE WILLIAMS, JESSICA TROY,
WILLIAM DARROW, CYRUS R. VANCE, JR., P.O.
RAQUEL WARBURTON, SERGEANT RICARDO SANTOS,
SERGEANT JOHN WERNICKU, THE CITY OF NEW YORK,
and JOHANNA WIRTH,

                        Defendants.

------------------------------------------X

A P P E A R A N C E S:

        Pro Se

        James V. Wiltshire
        560 Main Street, Apt. 474
        New York, NY  10044

        Attorneys for Defendants Keagan Marie Williams,
        Jessica Troy, William Darrow and Cyrus R. Vance, Jr.

        NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE
        1 Hogan Place
        New York, NY  10013
        By:  Anne Louise Schwartz, Esq.

        Attorneys for Defendants City of New York and Raquel
        Warburton

        OFFICE OF CORPORATION COUNSEL OF THE CITY OF NEW YORK
        100 Church Street
        New York, NY  10007
        By:  Mary Theresa O'Flynn, Esq.
            Bradford Collins Patrick, Esq.
            Steven Mark Silverberg, Esq.

**Sweet, D.J.**

There are three motions pending in the above-captioned action. Plaintiff James Wiltshire ("Wiltshire," or the "Plaintiff") has filed a motion for reconsideration of the Court's opinion filed January 3, 2012 (the "January 3 Opinion") granting the motion to dismiss filed by Defendants Keagan Marie Williams, Jessica Troy, William Darrow and Cyrus R. Vance, Jr. (the "DA Defendants"). Wiltshire has also filed a motion for disqualification and recusal pursuant to 28 U.S.C. § 455. Finally, Defendants City of New York and Police Officer Raquel Warburton ("Warburton" and, with the City of New York, the "City Defendants") have moved, pursuant to Fed. R. Civ. P. 12(c), to dismiss Wiltshire's amended complaint filed May 16, 2011 (the "Amended Complaint"). Based upon the conclusions set forth below, the Plaintiff's motion for reconsideration is granted. However, upon reconsideration, the Court affirms the conclusion reached in the January 3 Opinion granting the DA Defendants' motion to dismiss. The Plaintiff's motion for disqualification and recusal is denied, and the City Defendants' motion to dismiss is granted.

**Prior Proceedings**

1

The allegations contained in the Amended Complaint and most of the prior proceedings concerning Wiltshire's lawsuit are outlined in the January 3 Opinion. Familiarity with these prior proceedings is assumed. On January 12, 2012, the Plaintiff filed his motion for reconsideration. The motion was heard on submission and marked fully submitted on February 8. On February 10, the Court received a letter from the Plaintiff requesting that the Court disqualify and recuse itself pursuant to 28 U.S.C. § 455. The February 10 letter also asked that the Court reconsider an order dated January 30 granting the City Defendants an additional ten pages for the City Defendants' Fed. R. Civ. P. 12(c) motion. The Plaintiff followed up his February 10 correspondence with a letter dated February 14 requesting the same relief.[1] The Plaintiff's request was treated as a motion and marked fully submitted on February 28. On February 7, 2012, the Court received the City Defendants' motion to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(c). Although the City Defendants' motion to dismiss was not electronically filed until February 15, counsel for the City Defendants has attested that he served Wiltshire on February 6, 2012. Pursuant

---

[1]    Because this February 14 version of the letter is the one the Plaintiff served upon his opposition, the February 14 letter is the version that has been considered in this opinion.

to the Court's scheduling order dated February 8, the City
Defendants' motion was marked fully submitted on February 29.

Notwithstanding the scheduling order establishing
February 29 as the deadline for submission of materials related
to the City Defendants' Fed. R. Civ. P. 12(c) motion, the
Plaintiff has submitted additional materials past that deadline.
These materials include a June 9, 2010 request from the New York
County District Attorney's Office to the New York City Family
Court records office for a certified copy of the temporary order
of protection entered against Wiltshire, a document entitled
"Record of Court Action" from the Criminal Court of the City of
New York, a copy of a petition regarding a violation of an order
of protection filed with the Family Court of the State of New
York on June 1, 2010, a document entitled "Family Offense /
Order of Protection / Violation / Modification Worksheet" dated
June 1, 2010 describing Wiltshire's alleged violation of an
order of protection, a copy of an order of protection issued by
the Family Court of the State of New York dated May 6, 2010 and
an affidavit dated May 27, 2010 submitted by Warburton to the
Criminal Court of the City of New York, County of New York.
Because of the Plaintiff's pro se status and because of the City
Defendants' delay in filing their Rule 12(c) motion

3

electronically, the Court has considered these additional materials in evaluating the pending motions.  See Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) ("Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.") (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

## The Applicable Standards

As noted above, there are three motions pending before the Court, each of which carries its own applicable standard. As Wiltshire is proceeding pro se, his petition will be construed liberally.  See Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) ("[T]he pleadings of a pro se plaintiff must be read liberally and should be interpreted to 'raise the strongest arguments that they suggest.'") (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

### A. Motion For Reconsideration

4

The Plaintiff requests reconsideration of the January 3 Opinion pursuant to Fed. R. Civ. P. 59(e).  Under Fed. R. Civ. P. 59(e), a court may grant reconsideration where the party moving for reconsideration demonstrates an "intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Henderson v. Metro. Bank & Trust Co., 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007) (quotation marks and citations omitted); Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) ("Reconsideration may be granted to correct clear error, prevent manifest injustice or review the court's decision in light of the availability of new evidence.") (citing Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)); Catskill Dev., L.L.C. v. Park Place Entm't Corp., 154 F. Supp. 2d 696, 701-02 (S.D.N.Y. 2001) (granting reconsideration due to the court's erroneous application of a statute).  The moving party must demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision.  See Linden v. Dist. Council 1707-AFSCME, 415 Fed. Appx. 337, 338-39 (2d Cir. 2011) (affirming dismissal of reconsideration motion as movant did not identify any relevant facts or controlling authority that the

5

lower court overlooked); Lichtenberg v. Besicorp Grp. Inc., 28
Fed. Appx. 73, 75 (2d Cir. 2002) (affirming dismissal of
reconsideration motion where movant "failed to demonstrate that
the [lower] court overlooked any fact of consequence or
controlling legal authority at the time the court decided [the
case]").

The reason for the rule confining reconsideration to
matters that were "overlooked" is to "ensure the finality of
decisions and to prevent the practice of a losing party
examining a decision and then plugging the gaps of a lost motion
with additional matters." Polsby v. St. Martin's Press, Inc.,
No. 97 Civ. 690(MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18,
2000) (citation and quotation marks omitted).  A court must
narrowly construe and strictly apply Local Rule 6.3, which
governs motions for reconsideration or reargument, so as to
avoid duplicative rulings on previously considered issues and to
prevent the rule from being used as a substitute for appealing a
final judgment.  See In re Bear Stearns Cos., Inc. Sec.
Derivative and ERISA Litig., 08 M.D.L. No. 1963, 2009 WL
2168767, at *1 (S.D.N.Y. Jul. 16, 2009) ("A motion for
reconsideration is not a motion to reargue those issues already
considered when a party does not like the way the original

6

motion was resolved.") (quoting <u>Davey v. Polan</u>, 496 F. Supp. 2d
387, 389 (S.D.N.Y. 2007)); <u>ResQNet.com, Inc. v. Lansa, Inc.</u>, No.
01 Civ. 3578, 2008 WL 4376367, at *2 (S.D.N.Y. Sept. 25, 2008)
("The standard for granting such a motion is strict, and
reconsideration will generally be denied unless the moving party
can point to controlling decisions or data that the court
overlooked—matters, in other words, that might reasonably be
expected to alter the conclusion reached by the court.")
(citations and quotation marks omitted).  Motions for
reconsideration "are not vehicles for taking a second bite at
the apple, . . . and [the court] [should] not consider facts not
in the record to be facts that the court overlooked." <u>Rafter v.
Liddle</u>, 288 Fed. Appx. 768, 769 (2d Cir. 2008) (citation and
quotation marks omitted).

Even if a court grants a motion for reconsideration,
it can reaffirm on other grounds the conclusion reached in its
previous opinion. See, e.g., <u>Castro v. United Sec. Inc.</u>, No. 10
Civ. 6152(LBS), 2012 WL 555701, at *1 (S.D.N.Y. Feb. 21, 2012)
("For the reasons discussed below, the motion for
reconsideration is granted.  Upon reconsideration, we
nevertheless reaffirm on other grounds the conclusion we reached
in the October 17, 2011 Order, dismissing the case.").

**B. Motion For Disqualification Or Recusal Under 28 U.S.C. § 455**

The standard for recusal pursuant to 28 U.S.C. § 455 is whether "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal[.]" United States v. Lovaglia, 954 F.2d 811, 815 (2d Cir. 1992). Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." A judge's acquaintance with a party, an attorney, or a witness, without some factual basis for inferring bias or prejudice, is not sufficient to warrant recusal. See, e.g., Bailey v. Broder, No. 94 Civ. 2394, 1997 WL 73717, at *3 (S.D.N.Y. Feb. 20, 1997); United States v. Occhipinti, 851 F. Supp. 523, 525 (S.D.N.Y. 1993). Where the standards governing recusal are not met, "disqualification is not optional; rather, it is prohibited." In re Aguinda, 241 F.3d 194, 201 (2d Cir. 2001); see also In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1312 (2d Cir. 1988) ("A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is.").

**C. Motion To Dismiss Under Fed. R. Civ. P. 12(c)**

8

A motion for judgment on the pleadings made pursuant to Fed. R. Civ. P. 12(c) is analyzed under the same standard applicable to a motion to dismiss for failure to state a claim made pursuant to Rule 12(b)(6).  See, e.g., Johnson v. Rowley, 569 F.3d 40, 43-44 (2d Cir. 2009); Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases).

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader.  Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).  "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims . . . .'"  Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868

9

(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Plaintiffs must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.  Though the Court must accept the factual allegations of a complaint as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Iqbal, 129 S.Ct. at 1950 (quoting Twombly, 550 U.S. at 555).

**The Plaintiff's Motion For Reconsideration Is Granted, But The Decision To Grant The DA Defendants' Motion To Dismiss Is Affirmed**

On June 13, 2011, the DA Defendants moved to dismiss Wiltshire's Amended Complaint, and on June 22, the Court issued a scheduling order stating that the DA Defendants' Rule 12(b)(6) motion would be heard on submission on August 10, 2011.  The Plaintiff did not file an opposition to the DA Defendants' motion to dismiss.  In the January 3 Opinion, the Court granted the DA Defendants' motion to dismiss without prejudice, allowing the Plaintiff to replead within thirty days.  See Wiltshire v. Williams, No. 10 Civ. 6947, 2012 WL 11273, at *2 (S.D.N.Y. Jan. 3, 2012).  This January 3 Opinion, which focused on the Plaintiff's lack of opposition and failed to provide sufficient

10

explanation of the Court's rationale for granting the motion to dismiss, was in error.  See McCall v. Pataki, 232 F.3d 321, 323 (2d Cir. 2000) ("The district court in the present case did not address the merits of defendants' Rule 12(b)(6) motion and appears to have dismissed the complaint solely on the ground that [the plaintiff] did not respond to the motion.  Dismissal on that basis was in error.").  Accordingly, the Plaintiff's motion for reconsideration is granted.  However, as noted above, even if a motion for reconsideration is granted, a court can affirm on other grounds the conclusion reached in its previous opinion.  See, e.g., Castro, 2012 WL 555701, at *1.  Here, upon providing a more fulsome explanation for its conclusion, the Court reaffirms its granting of the DA Defendants' motion to dismiss.

The Plaintiff's Amended Complaint seeks "compensatory damages, punitive damages and other relief this Court deems just and proper pursuant to 42 U.S.C. § 1983 for direct violations and actual deprivations of his civil rights."  The Plaintiff's claims include false arrest, false imprisonment, detention and confinement, assault, battery, malicious prosecution, negligence, conspiracy, intentional infliction of emotional distress, excessive bail, negligent training and supervision,

11

supervisory liability, defamation, invasion of privacy, violation of statutory rights under CPL 160.60 and 160.60 and interference with prospective advantage (loss of potential income) and municipal liability. There are four DA Defendants: the District Attorney of New York County and three Assistant District Attorneys. Because the DA Defendants are immune from liability, the DA Defendants' motion to dismiss the Amended Complaint is granted.[2]

The Eleventh Amendment divests this Court of subject matter jurisdiction over any claim for monetary damages against a state actor acting in his official capacity. See Kentucy v. Graham, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("The Court has held that, absent a waiver by the State or valid

---

[2]    It should also be noted that the Amended Complaint fails to make any specific allegations of wrongdoing against District Attorney Vance.  To state a cognizable claim under 42 U.S.C. § 1983, a plaintiff must show that the defendant was personally involved in the alleged constitutional violation.  See Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) ("Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on a claim for damages under § 1983."); Joyner v. Griener, 195 F. Supp. 2d 500, 505 (S.D.N.Y. 2002) ("It is well settled in this Circuit that, in order to state a cognizable claim under 42 U.S.C. § 1983, a complaint must contain specific allegations of personal involvement of defendants in alleged constitutional deprivations . . .") (internal citations and quotation marks omitted).  Accordingly, the Amended Complaint fails to plead a valid cause of action against the District Attorney.

congressional override, the Eleventh Amendment bars a damages action against a State in federal court."). Section 1983 has been held not to have abrogated states' sovereign immunity, see Quern v. Jordan, 440 U.S. 332, 343, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), and New York has not consented to suits in federal court, see Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 38-39 (2d Cir. 1977). The Eleventh Amendment thus precludes any claim for monetary damages against the DA Defendants in their official capacities. See Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997) ("In addition, [the plaintiff] claims present and former Kings County District Attorneys Charles Hynes and Elizabeth Holtzman and Assistant District Attorneys Janes Sutley and Peter Weinstein are responsible for the delay in his appeal. To the extent [the plaintiff] seeks damages from these appellees in their official capacities, the Eleventh Amendment bars his claims.").

In addition to the Eleventh Amendment, the Amended Complaint fails to state a claim against the DA Defendants because "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley v.

13

Fitzsimmons, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209

(1993).  This immunity covers any claim involving the decision

to prosecute the Plaintiff.  See Imbler v. Pachtman, 424 U.S.

409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) ("We hold only

that in initiating a prosecution and in presenting the State's

case, the prosecutor is immune from a civil suit for damages

under § 1983.").  Because this immunity is absolute, it cannot

be overcome by allegations that the actions of the prosecutors

were malicious or that they were undertaken as part of a

conspiracy.  Dorman v. Higgins, 821 F.2d 133, 139 (2d Cir. 1987)

("[S]ince absolute immunity spares the official any scrutiny of

his motives, an allegation that an act was done pursuant to a

conspiracy has no greater effect than an allegation that it was

done in bad faith or with malice, neither of which defeats a

claim of absolute immunity"); Shmueli v. City of New York, 424

F.3d 231, 237 (2d Cir. 2005) ("Once the court determines that

the challenged prosecution was not clearly beyond the

prosecutor's jurisdiction, the prosecutor is shielded from

liability for damages commencing and pursuing the prosecution,

regardless of any allegations that his actions were undertaken

with an improper state of mind or improper motive."); Pinaud v.

County of Suffolk, 52 F.3d 1139, 1148-49 (2d Cir. 1995).  The

Amended Complaint is devoid of any allegation that the DA

14

Defendants lacked jurisdiction in charging the Plaintiff. Because the acts alleged in the Amended Complaint, including that the DA Defendants interviewed the Plaintiff, prepared a criminal court complaint and made a bail request, are all associated with the DA Defendants' prosecutorial functions, the Amended Complaint fails to allege any cause of action sufficient to overcome the DA Defendants' protection of immunity.

Although the Plaintiff's motion for reconsideration is granted, the granting of the DA Defendants' motion to dismiss is affirmed as the Eleventh Amendment and prosecutorial immunity preclude the Plaintiff's claims against the DA Defendants.

## The Plaintiff's Request For Recusal Is Denied

In a letter dated February 14, the Plaintiff filed his request for disqualification and recusal pursuant to 28 U.S.C. § 455.[3]  In support of its request, the Plaintiff alleges that this Court is unable to objectively adjudicate the present dispute:

---

[3]    This February 14 letter also requested that the Court reconsider an order dated January 30 granting the City Defendants an additional ten pages for the memorandum of law accompanying their Fed. R. Civ. P. 12(c) motion.  This request for reconsideration is addressed in the next section below.

15

Public records indicate that this Court served as a deputy
mayor of New York City, a defendant in this action, from
1966 to 1969.  This position was appointive at the time as
it is currently.  At issue is the fact that this Court was
an official/officer/employee of one of the defendants in
this action.  That this Court was so appointed, betrays a
degree of its political connection to City's political
machinery through certain political affiliations and
connections.  As such the Court has membership in civic and
political groups which control the levers of power in New
York City, a defendant in the action before this very
Court.  Moreover, Elliot [sic] Spitzer, was a former clerk
of the Court.  Mr. Spitzer was employed with the New York
Count [sic] district attorney's office_another of the
defendants in this action.  Spitzer was elected as New York
State Attorney General.  His candidacy was supported by the
Democratic Party.  Spitzer thereafter was elected Governor
of the State of New York.  This Court swore in Mr. Spitzer
to this office.  There are public records, including photo
images, of a beaming and glowing Honorable Robert W. Sweet
conducting all the pomps that go along along [sic] with
swearing an official to his/her office.  That this Court
swore in Mr. Spitzer to his gubernatorial robe [sic] is not
trivial and further demonstrate [sic] the former ties to
state and city power structures.

The Plaintiff's motion highlights the "inter-connected interests
that tie this Court to City and DA defendants" and claims that
the "same configuration of the levers of power helped Cyrus R.
Vance, Jr. to win the election for New York Count [sic] district
attorney and also helped Mr. Spitzer become governor."

        As noted above, "it is well settled that a judge's
acquaintance with a party, an attorney or a witness, without

16

some factual allegation of bias or prejudice is not sufficient to warrant recusal." Bailey, 1997 WL 73717, at *3. If this Court's previous position as Deputy Mayor in the late-1960s were deemed to constitute a sufficient factual basis upon which to disqualify this Court from hearing matters concerning the City of New York, its police department or administrative agencies, this Court would be unable to hear a large swath of litigation brought in the Southern District of New York. Fortunately, there exists a strong presumption of a judge's impartiality which may only be overcome by adequate proof to the contrary. See Occhipinti, 851 F. Supp. at 525 ("Moreover, the judge is presumed to be impartial and a substantial burden is imposed on the affiant to prove otherwise."). The "strong presumption that a judge is impartial . . . grows in large part from the fact that the practice of law is a profession, and the judicial office is one specialized manifestation of that profession." Bailey, 1997 WL 73717, at *3 (quoting United States v. Kehlbeck, 766 F. Supp. 707, 713 (S.D. Ind. 1990)). The Second Circuit has emphasized that a judge has a duty not to recuse unless the facts warrant it, and this duty is as strong as the duty to do so when warranted. In re Drexel Burnham Lambert, 861 F.2d at 1312 ("A judge is as much obliged not to recuse himself when it is not called for as he is obligated to when it is.").

17

The foregoing principles establish that the Plaintiff's request for this Court to recuse itself pursuant to 28 U.S.C. § 455 is without merit.  The Plaintiff's discussion of an office held more than forty years ago and a law clerk who served nearly thirty years ago does not constitute a basis of bias or prejudice sufficient to warrant recusal.  The Plaintiff has presented no other facts suggesting that this Court is unable to adjudicate this dispute in the disinterested manner judicial office requires.  Accordingly, the Plaintiff's request for disqualification or recusal pursuant to 28 U.S.C. § 455 is denied.

**The City Defendants' Rule 12(c) Motion Is Granted**

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  As noted above, the standards governing a motion for judgment on the pleadings filed pursuant to Fed. R. Civ. P. 12(c) are the same as those governing a Rule 12(b)(6) motion to dismiss.  Because the Amended Complaint fails to present facts necessary to rebut Defendant Warbuton's qualified immunity or sufficient

18

allegations to establish a policy, custom or practice that
caused his alleged constitutional violations, the City
Defendants' Rule 12(c) motion is granted.

However, prior to addressing the merits of the City
Defendants' Rule 12(c) motion, a procedural issue concerning the
length of the pleadings must first be addressed.  In a letter
dated January 27, the City Defendants, pursuant to this Court's
individual rules, requested leave to file a memorandum of law in
support of their motion to dismiss that exceeded 25 pages.  The
Court granted the City Defendants' request on January 30.  In
his February 14 letter to the Court, the Plaintiff, in addition
to requesting disqualification and recusal, requested that the
Court reconsider the January 30 order permitting the City
Defendants' to file an additional ten pages in support of their
Rule 12(c) motion.  According to the Plaintiff, the Court's
granting of the City Defendants' request without hearing
opposition from the Plaintiff constitutes a violation of the
Plaintiff's right to procedural due process.  The Plaintiff also
contends that the City Defendants' Rule 12(c) motion is invalid
because the pleadings are not yet closed.  According to the
Plaintiff, although the City Defendants filed an answer on July
6 pursuant to a 30-day extension granted by the Court on June 6,

19

the answer should be stricken because the City Defendants, who claimed to have Wiltshire's consent in requesting the 30-day extension, actually acted without the Plaintiff's consent.

Because the Court has discretion to waive its Individual Rules and Procedures, the Plaintiff's request for reconsideration of the January 30 order granting the City Defendants an additional ten pages in excess of the usual 25-page limit is denied.  See Ocasio v. Fashion Inst. of Tech., 86 F. Supp. 2d 371, 375 (S.D.N.Y. 2000) (describing "the Court's waiver of its Individual Rules and Procedures" as "a decision clearly within the Court's discretion to make").  The Court also finds little merit in the Plaintiff's contention that the City Defendants acted without his consent, as the Plaintiff failed to raise this issue until eight months after the Court endorsed the City Defendants' application for a 30-day extension and only after the City Defendants' Rule 12(c) motion was filed.

With respect to Police Officer Warburton, the Amended Complaint is unclear which of causes of action are directed at her specifically.  In two places in the Amended Complaint, once between the claim "invasion of privacy" and "violation of statutory rights under CPL 160.50 and 160.60" and once between

20

"violation of statutory rights under CPL 160.50 and 160.60" and
"interference with prospective advantage: loss of potential
incomes," the Plaintiff includes the heading "Claims Against
Defendant Warburton."  Reading the pro se Plaintiff's Amended
Complaint most liberally, it is assumed that all applicable
causes of action apply to Defendant Warburton.  However, the
Amended Complaint must be dismissed because the facts alleged in
the Amended Complaint establish Warburton's actions to be
protected by qualified immunity.

        "Qualified immunity shields an officer from suit when
she makes a decision that, even if constitutionally deficient,
reasonably misapprehends the law governing the circumstances she
confronted."  Brosseau v. Haugen, 543 U.S. 194, 198, 125 S.Ct.
596, 160 L.Ed.2d 583 (2004).  "Qualified immunity shields police
officers acting in their official capacity from suits for
damages under 42 U.S.C. § 1983, unless their actions violate
clearly-established rights of which an objectively reasonable
official would have known."  Wilson v. Aquino, 233 Fed. Appx.
73, 76 (2d Cir. 2007) (citing Holeman v. City of New London, 425
F.3d 184, 189 (2d Cir. 2005).  "Because qualified immunity is
'an immunity from suit rather than a mere defense to liability .
. . it is effectively lost if a case is erroneously permitted to

21

go to trial.'"  Pearson v. Callahan, 555 U.S. 223, 231, 129

S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting Mitchell v. Forsyth,

472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).  The

Supreme Court has "made clear that the 'driving force' behind

creation of the qualified immunity doctrine was a desire to

ensure that 'insubstantial claims against government officials

will be resolved prior to discovery.'"  Pearson, 555 U.S. at 231

(quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2, 107 S.Ct.

3034, 97 L.Ed.2d 523 (1987)).  Accordingly, the Supreme Court

has "stressed the importance of resolving immunity questions at

the earliest possible stage in litigation."  Hunter v. Bryant,

502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

"[W]hen determining a motion to dismiss on qualified immunity

grounds in advance of full merits discovery, the plaintiff's

version of the facts is presumed to be true, and the question to

be answered is whether the defendant officer, confronted with

the facts as alleged by plaintiff, could reasonably have

believed that his actions did not violate some settled

constitutional right."  5 Borough Pawn, LLC v. City of New York,

640 F. Supp. 2d 268, 285 (S.D.N.Y. 2009) (citing Stephenson v.

Doe, 332 F.3d 68 (2d Cir. 2003).  In this case, the Amended

Complaint alleges facts under which Defendant Warburton could

have reasonably believed that her actions did not violate the
Plaintiff's constitutional rights.

The Amended Complaint alleges that "[o]n June 2, 2010,
Plaintiff received call from P.O. Raquel Warburton who informed
Plaintiff that he was wanted and to be arrested for violating an
order of protection[.]"  The Amended Complaint states that the
Plaintiff denied these accusations and "flatly told Officer
Warburton that he wouldn't turn himself or cooperate in what he
stated was a baseless police action."  The Amended Complaint
further describes Warburton's efforts in locating the Plaintiff,
reaching out to the Consulate General of Grenada and Brooklyn
College, where the Plaintiff had been a student, and placing a
wanted poster with a mug shot of the Plaintiff from a previous
arrest in various subway stations, instructing those with
information to contact the NYPD's sixth precinct.  According to
the Amended Complaint, the Plaintiff's attorney, Gary Schultz,
contacted Warburton "to inform her that Plaintiff could not be
legally or lawfully arrested for an order [of protection] of
which he has no knowledge" but that "Warburton informed
Plaintiff that she received Attorney Shultz message but she has
no intention of speaking to him as this matter is now in the
hands of the New York County District Attorney Office and the

23

assigned ADA is in agreement that Plaintiff Wiltshire should be
arrested for contempt in violation of an order of protection."
The Amended Complaint further alleges:

> Plaintiff spoke to Warburton to make arrangement as to the
> time for him to show up at the precinct the following day.
> Plaintiff specifically requested that he is to be presented
> with a copy of the order of protection and the warrant of
> arrest. Defendant Warburton stated that she does not have
> copy of the order and that she is not required to see the
> order personally given that the complaining has provided
> ADA Williams and her sufficient information which led them
> to believe that an order was indeed issued. Plaintiff did
> not take issue with the fact as to whether an order was
> issued but as to the fact that he had no knowledge of it,
> was not served said order and was not in court when it was
> issued. In response, Defendant Warburton stated that the
> rule and her directives are mandatory arrest when
> protective orders are violated with the accused knowledge
> or awareness thereof inconsequential as to the arrest.
> Defendant Warburton then stated that her instructions and
> directives are to "err on the side of caution" and thus
> pass the buck to the court. When Plaintiff again
> threatened to sue, Warburton responded that Plaintiff could
> take this up with the City as she is doing her job in
> compliance with instructions, directives and training by
> the New York City Police Department. Warburton again
> stated that according to the specific directives,
> instructions and training she received the issue of the
> service, knowledge and awareness of the conditions
> proscribed in the protective order is for a judge to
> decide.

The Amended Complaint also describes how ADA Williams and
Warburton drafted and filed a criminal complaint charging
Wiltshire.

24

These facts, which are presumed to be true at this
stage of the litigation, establish that Warburton could have
reasonably believed that her actions did not violate the
Plaintiff's constitutional rights.  The facts as alleged
establish that "the complaining" (the complainant) provided
Warburton with information that Warburton, after consulting with
the New York County District Attorney's Office, believed to
indicate that an order of protection had been violated.
Allegations brought by the putative victim of a crime are
generally sufficient, by themselves, to furnish an officer with
probable cause to make an arrest.  See, e.g., Curley v. Village
of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is
received from a putative victim or an eyewitness, probable cause
exists unless the circumstances raise doubt as to the person's
veracity.") (citing Singer v. Fulton County Sheriff, 63 F.3d
110, 119 (2d Cir. 1995)); Miloslavsky v. AES Eng'g Soc'y, Inc.,
808 F. Supp. 351, 355 (S.D.N.Y. 1992) ("The veracity of citizen
complainants who are the victims of the very crime they report
to the police is assumed"), aff'd 993 F.2d 1534 (2d Cir. 1993).
The Amended Complaint then alleges that Warburton worked with
the Assistant District Attorney in charge of the case to draft
the criminal complaint charging the Plaintiff.  As such, the
facts alleged in the Amended Complaint, which are assumed to be

25

true at this stage of the litigation, establish that Defendant
Warburton, acting with probable cause and working with the
District Attorney's Office to speedily charge the Defendant,
could reasonably have believed that her actions did not violate
Wiltshire's constitutional rights.  Qualified immunity thus
shields Warburton from the Plaintiff's lawsuit.

Although reviewing such material is not necessary for
the Court to reach its conclusion, documents external to the
Amended Complaint submitted by the Plaintiff support the fact
that qualified immunity shields Warburton from liability.[4]  The

---

[4]     Generally, consideration of a motion to dismiss under Rule
12(b)(6) is limited to consideration of the complaint itself.
However, "[i]f, on a motion [for dismissal under Rule 12(b)(6)],
matters outside the pleading are presented to and not excluded by the
court, the motion shall be treated as one for summary judgment and
disposed of as provided in Rule 56, and all parties shall be given
reasonable opportunity to present all material made pertinent to such
a motion by Rule 56." Fed. R. Civ. P. 12(b); see also Faulkner v.
Beer, 463 F.3d 130, 134 (2d Cir. 2006).  However, for purposes of this
rule, "the complaint is deemed to include any written instrument
attached to it as an exhibit or any statements or documents
incorporated in it by reference." Int'l Audiotext Network, Inc. v.
Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)
(quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d
Cir. 1991).  Even where a document is not incorporated by reference,
the court may nevertheless consider it where the complaint "relies
heavily upon its terms and effect," which renders the document
"integral" to the complaint.  Int'l Audiotext, 62 F.3d at 72.  With
respect to a Fed. R. Civ. P. 12(b)(6) motion, the Second Circuit has
"stated that, generally, the harm to the plaintiff when a court
considers material extraneous to a complaint is the lack of notice
that the material may be considered."  Chambers v. Time Warner, Inc.,

Plaintiff has submitted documentation establishing that, on May

6, 2010, the Family Court of the State of New York issued a

Temporary Order Of Protection ("TOP") against Wiltshire.  This

document establishes that the TOP remained in effect until June

16, 2010 and that the order of protection prohibited

"communication or any other contact by mail, telephone, e-mail,

voice-mail or other electronic or any other means" and also

---

282 F.3d 147, 153 (2d Cir. 2002) (citing Cortec, 949 F.2d at 48).  "A
finding that plaintiff has had notice of documents used by defendant
in a 12(b)(6) motion is significant since, as noted earlier, the
problem that arises when a court reviews statements extraneous to a
complaint generally is the lack of notice to the plaintiff that they
may be so considered; it is for that reason - requiring notice so that
the party against whom the motion to dismiss is made may respond -
that Rule 12(b)(6) motions are ordinarily converted to summary
judgment motions."  Cortec, 949 F.2d at 48.  In this case, the
extraneous information upon which the Court relies was submitted to
the Court by the Plaintiff himself.  As such, the Plaintiff is aware
of the content of these papers and has had adequate opportunity to
respond.  Furthermore, a court make take judicial notice of these
documents as matters of public record.  See, e.g., Reisner v. Stoller,
51 F. Supp. 2d 430, 440 (S.D.N.Y. 1999) (in deciding a Rule 12(b)(6)
motion, "[t]he court may also take judicial notice of matters of
public record, such as pleadings and court orders from prior
litigation between the parties."); see also Pani v. Empire Blue Cross
Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998) (affirming district
court's dismissal of complaint in the context of a Rule 12(b)(6)
motion on the basis of immunity, rejecting argument that the district
court had impermissibly relied on extrinsic material, noting that the
information upon which the district court relied was available in case
law and statutes and that "[i]t is well established that a district
court may rely on matters of public record in deciding a motion to
dismiss under Rule 12(b)(6)").  The documents considered here, which
the Plaintiff obtained as a matter of public record, are an order
issued by the Family Court of the State of New York and an affidavit
filed in the Criminal Court of the City of New York.

forbade "stalking, harassment, aggravated harassment, menacing, reckless endangerment, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats or any criminal offense against" the complainant who requested the TOP (the "Complainant"). In addition to the TOP, the Plaintiff has submitted an affidavit filed with the Criminal Court of the City of New York in which Warburton swears the Complainant informed her that, on May 27, 2010, the Defendant committed the offenses of stalking in the fourth degree, criminal contempt in the second degree and harassment in the second degree when he approached the Complainant, followed her and her friend for three blocks and yelled "Whore! German whore! German blow job!" Although it is not necessary for the Court to review these external materials to reach its conclusion that qualified immunity protects Warburton, these documents support the Court's conclusion, as they evidence that a protective order was in place, that the Complainant provided Warburton with evidence that Wiltshire had violated the protective order and that Warburton could reasonably have believed that her actions did not violate Wiltshire's constitutional rights, but rather enforced the protective order issued by the Family Court of the State of New York.

The Amended Complaint is also dismissed with respect to the City of New York because the Plaintiff has failed to state a valid 42 U.S.C. § 1983 claim.  In order to hold a municipality liable under 42 U.S.C. § 1983, an official policy or custom must be shown to be the cause of the deprivation of constitutional rights.  City of Oklahoma City v. Tuttle, 471 U.S. 808, 818, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).  To establish causation, a plaintiff "must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries," and second, a plaintiff "must establish a causal connection - an 'affirmative link' - between the policy and the deprivation of his constitutional rights." Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (citing Tuttle, 471 U.S. at 824 n.8); see also Monell v. Dep't of Social Servs. Of City of N.Y., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,

29

inflicts the injury that the government as an entity is
responsible under § 1983.").


Here, the Amended Complaint alleges municipal
liability "against Defendant City of New York for a deliberate
indifference to the rights of defendants or persons accused of
violating orders of protection by its condoning, encouraging and
sanctioning of a policy which says arrest[s] are mandatory as
the courts would sort out any procedural statutory and or
constitutional mistakes, missteps, circumnavigation of laws."
The Amended Complaint also seeks to hold the City of New York
liable for its "failure to adequately train a domestic violence
officer in the relevant aspects of laws" and for "sanctioning,
condoning the municipal's 'err on the side of caution' custom,
practice or de facto policy of mandatory arrest for alleged
violations of protective orders."


Although the Court is obligated to draw all factual
allegations in the Amended Complaint as true, see Mills, 12 F.3d
at 1174, the Court is "'not bound to accept as true a legal
conclusion couched as a factual allegation.'" Iqbal, 129 S.Ct.
at 1950 (quoting Twombly, 550 U.S. at 555). In terms of what a
complaint alleging a § 1983 claim must allege to survive a

30

motion to dismiss, "[b]aldly asserting that Plaintiff's injuries
are the result of the City's policies does not show this Court
what the policy is or how that policy subjected Plaintiff to
suffer the denial of a constitutional right." Cuevas v. City of
New York, No. 07 Civ. 4169(LAP), 2009 WL 4773033, at *4
(S.D.N.Y. Dec. 7, 2009); see also 5 Borough Pawn, 640 F. Supp.
2d at 299 ("[P]laintiffs' pleading in this case 'does not unlock
the doors of discovery' because of their assertion that the City
has an unconstitutional policy is based on nothing more than
their unsupported supposition.") (quoting Iqbal, 129 S.Ct. at
1950); Smith v. City of New York, 290 F. Supp. 2d 317, 322
(E.D.N.Y. 2003) (holding that a conclusory, boilerplate
assertion of a municipal policy or custom was insufficient to
survive motion to dismiss); Brodeur v. City of New York, No. 99
Civ. 651(WHP), 2002 WL 424688, at *6 (S.D.N.Y. Mar. 18, 2002)
("In this case, the complaint flatly asserts that the City had a
policy of 'stifling, discouraging and suppressing' critics of
the former Mayor and his administration by arresting them.
However, absent from the complaint are specific factual
allegations sufficient to establish that a municipal policy or
custom caused [the plaintiff's] alleged injury."); Econ.
Opportunity Comm'n v. County of Nassau, Inc., 47 F. Supp. 2d
353, 370 (E.D.N.Y. 1999) (dismissing municipal liability claim

31

where plaintiffs "d[id] not proffer any facts in support of the conclusory allegation that the defendants' conduct amounts to a custom or policy, or that this custom or policy caused the plaintiffs' injuries.").

As described above, the facts pleaded in the Amended Complaint establish that the NYPD had probable cause to arrest Wiltshire.  Although the Amended Complaint attacks the "instructions, directives and training by the New York City Police Department," the facts alleged in the Amended Complaint, rather than establish a policy that resulted in denial of the Plaintiff's constitutional rights, demonstrate that law enforcement officials had probable cause to arrest and prosecute Wiltshire for violating an order of protection.  Without sufficient facts supporting the existence of a policy, custom or practice that caused the Plaintiff to be deprived of his constitutional rights, the Amended Complaint fails to state a § 1983 claim against the City of New York.

The only federal claims the Amended Complaint asserts against the City Defendants concern 42 U.S.C. § 1983.  For the reasons described above, all federal claims against the City Defendants have been dismissed.  Absent any viable federal

32

claims, the Court declines jurisdiction over any remaining state
law claims.  See 28 U.S.C. § 1367(c)(3) ("The district courts
may decline to exercise supplemental jurisdiction over a claim
under subsection (a) if . . . the district court has dismissed
all claims over which it has original jurisdiction."); see also
Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994) (approving
lower court statement that "it is axiomatic that a court should
decline to exercise jurisdiction over state-law claims when it
dismisses the federal claims prior to trial.").


**The Motions Of The DA Defendants And The City Defendants Are
Granted With Prejudice**


        Dismissal with prejudice on a Rule 12(b)(6) motion is
appropriate when granting leave to amend would be futile, i.e.
when repleading would not cure the defect with the particular
cause of action.  See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d
Cir. 2000) ("The problem with Cuoco's causes of action is
substantive; better pleading will not cure it.  Repleading would
thus be futile.  Such a futile request to replead should be
denied.").  Because the facts alleged in the Amended Complaint
demonstrate the errors plaguing the Plaintiff's causes of action
to be substantive and incurable via a further amended complaint,

33

the motions to dismiss filed by the DA Defendants and the City Defendants are granted with prejudice.

**Conclusion**

Based upon the conclusions set forth above, the Plaintiff's motion for reconsideration is granted, but the Court affirms the conclusion reached in the January 3 Opinion granting the DA Defendants' motion to dismiss.  The Plaintiff's motion for recusal is denied, and the City Defendants' motion to dismiss is granted.  Because any amendment of the Plaintiff's complaint would be futile, the motions to dismiss filed by both the DA Defendants and the City Defendants are dismissed with prejudice.

It is so ordered.

**New York, NY**
**March / 5, 2012**

ROBERT W. SWEET
U.S.D.J.

34